**Coy GILLENWATER, Appellant,**

v.

**FORT BROWN VILLAS III, CONDOMINIUM ASSOCIATION, INC., d/b/a Fort Brown Condoshares and LRI Management, Inc., Appellees.**

No. 13–06–00478–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Nov. 1, 2007.

Rehearing Overruled Nov. 1, 2007.

---

Andrew B. Sommerman, Sommerman & Quesada, LLP, Barrett Havran, Dallas, TX, for Appellant.

Don W. Kothman, Ann S. Taylor, Knolle, Holcomb, Kothman & Callahan, P.C., Austin, TX, for Appellees.

Before Chief Justice VALDEZ and Justices BENAVIDES and VELA.

### MEMORANDUM OPINION ON MOTION FOR REHEARING[1]

Memorandum Opinion on Motion for Rehearing by Chief Justice VALDEZ.

Appellant, Coy Gillenwater sued Fort Brown Villas III Condominium Association, Inc., d/b/a Fort Brown Condoshares and LRI Management, Inc. ("Fort Brown"), appellees, alleging a premises liability claim. The trial court struck one of Gillenwater's expert witness's affidavits

---

1. We overrule appellees' motion for rehearing, withdraw our memorandum opinion and judgment issued on August 31, 2007, and issue this memorandum opinion in its place.

and granted Fort Brown a no-evidence summary judgment. Gillenwater asserts two issues complaining that the trial court erred (1) by not considering its expert's affidavit in the summary judgment proceeding, and (2) by granting Fort Brown a summary judgment because a genuine issue of material fact existed. We reverse and remand.

## I. BACKGROUND

Gillenwater rented a condominium at Fort Brown. The condominium complex's amenities included an on-site swimming pool, wooden deck, and lounge chairs. After swimming, Gillenwater sat on one of the chaise lounge chairs by the pool. As he sat down, the lounge chair broke and caught Gillenwater's right ring finger. Part of his ring finger was severed and fell between the wooden boards of the deck. The severed portion of Gillenwater's finger could not be attached to the rest of his finger. Gillenwater filed a premises liability suit.

The parties entered into an agreed scheduling order, which was amended by several written agreements. As amended, Gillenwater's deadline for the designation of expert witnesses was September 22, 2005; Fort Brown's deadline was November 18, 2005. The deadline for completing all discovery was March 6, 2006.

On February 10, 2006, Fort Brown filed a no-evidence motion for summary judgment asserting that Gillenwater had no evidence to support two elements of a premises liability claim. In its motion, Fort Brown argued that there was no evidence regarding (1) whether the chair's condition posed an unreasonable risk of harm, and (2) that Fort Brown knew or reasonably should have known of the danger.

Gillenwater responded to Fort Brown's motion on March 2, 2006. He argued that there was enough evidence to overcome a summary judgment. In addition to Gillenwater's response, several other documents were attached, including: (1) the deposition of Frank Collins, the manager at Fort Brown, (2) Gillenwater's deposition, and (3) the curriculum vitae and affidavit of Paul Carper, a professional engineer. In his deposition, Collins acknowledged that Fort Brown employees were supposed to wash, wipe down, and inspect the lounge chairs six days a week because of the corrosive effect of the swimming pool's chlorine. Gillenwater's deposition testimony states that he did not notice the chairs were damaged the day of his injury, but he returned to inspect the chair afterwards and saw a broken "rung."

Carper reviewed photographs of the suspect chair, the depositions of Gillenwater and Collins, and photographs of Gillenwater demonstrating how he was positioned in the chair at the time of the injury. Carper noted that the chair contained tube framing that was welded together. He observed that four welded joints on the chair's side framing had failed. Carper opined that:

Since the weld was broken where Mr. Gillenwater's right hand was positioned, a significant pinch point and ragged edge was present about a hold hole that remained where a portion of the rectangular tubing had torn away at the weld interface. Significant movement between the seating surface and main frame of the chair was possible because of the four (4) failed side welds.

Carper concluded that Gillenwater's injury was caused by the movement of the chair's seating surface relative to the frame of the chair while his finger was positioned in the area of a broken weld.

Fort Brown filed written objections to Carper's affidavit. Fort Brown argued

that Carper's affidavit should be stricken because it represented an untimely designation of an expert witness and contained conclusory statements. Gillenwater responded to Fort Brown's objections by reasoning that Carper's affidavit provided competent summary judgment evidence as recognized by this Court and other courts. A hearing on the summary judgment motion was held on March 9, 2006. On August 15, 2006, the trial court entered an order striking Carper's affidavit, granting Fort Brown's no-evidence motion for summary judgment, and rendering a take-nothing judgment. This appeal ensued.

## II. DISCUSSION

### A. Issue 1: Striking Carper's Affidavit

■ In his first issue, Gillenwater argues that the trial court erred in striking the affidavit of his expert witness, Carper. The trial court's decision to strike Carper's affidavit is governed by an abuse of discretion standard. *See Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex.1992). The test is whether the trial court acted without reference to any guiding principles. *Mack v. Suzuki Motor Corp.*, 6 S.W.3d 732, 733 (Tex.App.-Houston [1st Dist.] 1999, no pet.).

■ In the instant case, Fort Brown's basis for striking Carper's affidavit was that it represented an untimely designation of an expert witness and that Carper's statements were conclusory. We have already held that the rules regarding discovery supplementation do not apply to the comprehensive framework of summary judgment proceedings. *Alaniz v. Hoyt*, 105 S.W.3d 330, 340 (Tex.App.-Corpus Christi 2003, no pet.); *Gandara v. Novasad*, 752 S.W.2d 740, 743 (Tex.App.-Corpus Christi 1988, no writ). The trial court, therefore, could not have struck Carper's

affidavit based upon Fort Brown's timely designation argument.

■ We next consider whether Carper's affidavit was conclusory. "A conclusory statement 'is one that does not provide the underlying facts to support the conclusion.'" *See Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex.App.-Houston [1st Dist.] 1997, no writ) (citing *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (per curiam)); *see AMS Constr. Co. v. Warm Springs Rehab. Found.*, 94 S.W.3d 152, 157 (Tex.App.-Corpus Christi 2002, no pet.). Fort Brown objected to the following statements as being conclusory:

(1) Mr. Gillenwater's finger injury was caused by the movement of the chair seating surface relative to the frame of the chair while his finger was positioned in the area of the broken weld;

\* \* \*

(3) The two broken welds on each side of the chair frame were easily visible; the defendants either knew or should have known of the dangerous condition of the chair.

The two statements that Fort Brown asserts are conclusory are supported the following factual statements found in Carper's affidavit:

The weight of a person sitting on the seat of the chair would create a downward force on the seat webbing frame and round tubing relative to the sides of the chair frame. Since the weld was broken where Mr. Gillenwater's right hand was positioned, a significant pinch point and ragged edge was present about a hold that remained where a portion of the rectangular tubing had torn away at the weld interface. Significant movement between the seating surface and main frame of the chair was possible because of the four (4) failed

side welds. A chair in good condition would not have movement in the area where Mr. Gillenwater had his hand positioned at the time of the injury.

Additionally, Carper stated that the chair had a fifth weld that had failed and that this weld was "visible from beneath the chair." The statements that Fort Brown finds objectionable are supported by Carper's scientific observations. We hold that they are not conclusory and, therefore, that the trial court should not have struck Carper's affidavit. Gillenwater's first issue is sustained.

### B. Issue 2: The No–Evidence Summary Judgment

By his second issue, Gillenwater contends that the trial court erred in granting Fort Brown's no-evidence motion for summary judgment because a genuine issue of material fact existed.

In reviewing a no-evidence summary judgment, we ascertain whether the nonmovant produced summary judgment evidence of such probative force as to raise a genuine issue of fact as to the essential elements attacked in the no-evidence motion. *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 206–08 (Tex.2002). A no-evidence summary judgment is improperly granted when the respondent brings forth more than a scintilla of probative evidence raising a genuine issue of material fact. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003). The evidence amounts to more than a mere scintilla when it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). When reviewing a no-evidence motion for summary judgment, we review the evidence in the light most favorable to the respondent against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences if reasonable jurors could. *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex.2005). When, as here, the trial court's order does not specify the grounds upon which it relied, we must affirm if any ground is meritorious. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000).

■ The elements of a premises liability claim are: (1) actual or constructive knowledge of some condition on the premises by the owner/operator; (2) the condition posed an unreasonable risk of harm; (3) the owner/operator did not exercise reasonable care to eliminate or reduce the risk; and (4) the owner/operator's failure to use such care proximately caused the plaintiff's injuries. *Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex.1992). Fort Brown's no-evidence summary judgment motion contends that Gillenwater failed to present any evidence of the first two elements of a premises liability claim. We disagree.

■ There is some evidence that Fort Brown had actual or constructive knowledge of the lounge chairs's condition. Collins stated in deposition testimony that Fort Brown employees were supposed to wash, wipe down, and inspect the lounge chairs six days a week. Carper's affidavit averred that the fifth failed weld was visible from beneath the chair. Fort Brown employees, therefore, could have seen the broken weld during one of the routine inspections. Furthermore, Carper's affidavit, when viewed in the light most favorable to Gillenwater, amounts to some evidence that the chair posed an unreasonable risk of harm. Carper stated that the chair that injured Gillenwater had movement that a chair in good condition would not have had and that the chair had a "significant pinch point and ragged edge."

We find that a fact issue exists concerning the first two elements of a premises liability claim. We hold that the trial court erred in granting Fort Brown's no-evidence motion for summary judgment. Gillenwater's second issue is sustained.

### C. Response to the Dissent

The dissent contends that the discovery rules apply to summary judgment proceedings and that there is a conflict in our court's jurisprudence. The dissent premises its argument on the fact that we now have ascertainable discovery deadlines and that ascertainable deadlines give courts license to impose discovery sanctions on summary judgment evidence. The dissent makes textual and policy arguments for why discovery sanctions should apply to summary judgment proceedings. *See* TEX.R. CIV. P. 193.6. We believe both of the dissent's arguments are flawed and that there is no conflict within this court on how we review summary judgments.

First, the dissent inordinately believes that the term "discovery" as used in the summary judgment rule means "discovery sanctions." We, on the other hand, prefer to plainly read the rule. The dissent's textual argument is that the no-evidence summary judgment rule is linked to the discovery rules—and its sanctions—because it begins with the phrase "[a]fter adequate time for discovery...." *Gillenwater*, 286 S.W.3d 35, 2007 WL 3227685 (Tex.App.-Corpus Christi, 2007, no pet. h.) (J. Vela dissenting) (citing TEX.R. CIV. P. 166a(i)). The dissent also points to the 1997 comment to the summary judgment rule as a justification for its position. It, in part, reads:

A discovery period set by pretrial order should be adequate opportunity for discovery unless there is a showing to the contrary, and ordinarily a motion under paragraph (i) would be permitted after the period but not before.

TEX.R. CIV. P. 166a, cmt.1997. Both of the dissent's citations speak to the timing of a motion for summary judgment, not to the incorporation of discovery sanctions. Contrary to the dissent's apparent belief, the summary judgment rule is whole on its own. It contains expert testimony guidelines, timing deadlines, and bad faith punishments. *See Id.* 166a(c), (d) & (h). Should the supreme court have chosen to incorporate discovery sanctions into the summary judgment rule, it could have done so just as clearly as the rule's other provisions.

Second, the dissent's policy argument is that the summary judgment rule and discovery rules are "[b]oth procedural rules meant to expeditiously dispose of cases" and should be read in conjunction. *Gillenwater*, 286 S.W.3d 35, 2007 WL 3227685 (Tex.App.-Corpus Christi, 2007, no pet. h.) (J. Vela dissenting). This argument begs the question, "Which procedural rules are designed to delay the disposition of cases?" By the dissent's loose logic any two statutes or rules could be grafted together to satisfy any end in the name of expeditious justice. The dissent's sophistry is exactly why we do not change procedural rules through the common law. *See generally, State Dep't of Highways & Public Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex.1992) (discussing the procedural rules governing jury charges and cautioning that rules changes must await completion of a rule drafting process rather than revision by common law).

The real issue before us is whether the trial court erred in striking the plaintiff's affidavit from the summary judgment record. We have held that the affidavit was improperly struck because the rules regarding discovery supplementation do not apply to the comprehensive framework of

summary judgment proceedings. The dissent chooses to recast the issue into whether the affidavit's author would ultimately be able to testify at trial. It would judicially graft a new rule into the summary judgment scheme merely because the summary judgment rule mentions the word "discovery," and applying discovery sanctions to summary judgment proceedings is an easy way to usher cases out of the courthouse door. We will not change our review of summary judgments without a compelling reason, and the dissent has not offered one. *See Johnson v. Fuselier*, 83 S.W.3d 892 (Tex.App.-Texarkana 2002, no pet.) (criticizing a holding similar to the dissent's position as a change in reviewing summary judgments without a compelling reason).

The dissent also accuses us of creating a conflict within our own court's case law. It argues that dicta in *Soto v. Drefke*, No. 13–03–301–CV, 2005 Tex.App. LEXIS 1831, *7 n. 9, 2005 WL 549506 (Tex.App.-Corpus Christi Mar. 2005, pet. denied) (mem. op., not designated for publication), conflicts with this court's decision in *Alaniz*. The two cases are distinct because they deal with different issues. The central issue in *Soto* was whether the trial court abused its discretion in not granting a continuance. *Id.* at *8. The central issue in this case is the trial court's discretion in striking an affidavit offered by the non-movant. Because *Soto* and *Alaniz* resolve different issues, we do not see a conflict.

### III. CONCLUSION

The judgment of the trial court is reversed and the case is remanded for fur-ther proceedings consistent with this opinion. TEX.R.APP. P. 43.2(d).

### DISSENTING MEMORANDUM OPINION

Dissenting Memorandum Opinion by Justice VELA.

I write separately to dissent and to raise what appears to be a conflict within our own court as well as among various courts of appeals. The majority states that the trial court had no discretion to strike appellant's expert's affidavit which was filed after all expert deadlines had passed but was timely filed in response to Fort Brown's no-evidence motion for summary judgment. *See* TEX.R. CIV. P. 190.3, 190.4, 193.6. 166a(i). The majority reasons that two previous cases from this Court hold that the discovery rules are inapplicable in a summary judgment proceeding, so it is of no consequence that appellant failed to meet his deadline for designating experts. *See Alaniz v. Hoyt*, 105 S.W.3d 330, 340 (Tex.App.-Corpus Christi 2003, no pet.); *Gandara v. Novasad*, 752 S.W.2d 740, 743 (Tex.App.-Corpus Christi 1988, no writ).

These cases do, in fact, stand for the proposition that the discovery rules do not apply in summary judgment proceedings because Rule 166a presents a comprehensive framework. In a later opinion, however, this Court clearly suggested that Rule 193.6 of the rules of civil procedure would apply in a summary judgment case. *Soto v. Drefke*, No. 13–03–301–CV, 2005 WL 549506 at *2 n. 9 (Tex.App.-Corpus Christi 2005, pet. denied) (mem.op.) ("We do not wholly disagree with the application of Rule 193.6 in a summary judgment context under the revised rules.").[1] I agree

---

1. The majority incorrectly states that I am accusing it "of creating a conflict within our own court" in the majority's opinion. I am not. I think the conflict was previously created in *Soto* where Chief Justice Valdez suggests that this Court does not wholly disagree that Rule 193.6 might apply to a summary judgment case under the revised rules. Even though *Alaniz* and *Soto* deal with different issues, a common issue in all of these cases,

that the revised discovery rules should apply to summary judgments.

I also dissent because Carper's conclusory affidavit was incompetent summary judgment evidence and was correctly excluded by the trial court. Without it, there is no evidence that Fort Brown had actual or constructive knowledge of some condition on the premises that created an unreasonable risk of harm.

## I. The Carper affidavit was properly struck because the witness was not timely designated.

Appellant failed to meet the deadlines set forth in the rules of civil procedure. Generally, Rule 193.6 of the Texas Rules of Civil Procedure provides that expert testimony, not properly and timely disclosed, is inadmissible. If a party who fails to timely designate seeks to introduce such evidence or call a witness, the burden of establishing good cause or unfair surprise is upon that party. Tex.R. Civ. P. 193.6(b). The majority disregards this rule because it is not part of the framework of a summary judgment proceeding.

Here, the parties specifically entered into an agreed Level III scheduling order pursuant to Texas Rule of Civil Procedure 190.4, in which the appellant's discovery deadline for designating experts was extended to September 22, 2005, a date certain. This date was not complied with and Fort Brown filed a no-evidence motion for summary judgment five months later after its own deadline had passed.

Both *Alaniz* and *Gandara* hold that the discovery rules do not apply to summary judgments. *Gandara*, however, was a 1988 case which applied the pre–1999 discovery rules. Since 1988, the rules of civil

including this case, is whether 193.6 applies in a summary judgment brought under the

procedure have changed with regard to both summary judgment practice and discovery. Rule 166a(i) allows a motion for summary judgment to be filed after adequate time for discovery. And, in 1999, dramatic changes were made in pretrial discovery. The amended rules discourage delay. Under the old rules, the ending date of the discovery period and the date for designating experts were fluid, depending on the trial date. *See* Tex R. Civ. P. 166b(6)(b) (West 1998, repealed 1999). That is no longer the case. The date by which experts must be designated are dates certain that do not fluctuate depending upon the trial date. *Ersek v. Davis & Davis, P.C.*, 69 S.W.3d 268, 273 (Tex.App. Austin 2002, pet denied).

Most of the appellate courts addressing whether the discovery rules apply in a summary judgment case have applied the revised discovery rules to summary judgments. *See Ersek*, 69 S.W.3d at 273–74; *F.W. Industries, Inc. v. McKeehan*, 198 S.W.3d 217 (Tex.App.-Eastland 2005, no pet.); *Chau v. Riddle*, 212 S.W.3d 699, 704–5 (Tex.App.-Houston [1st Dist.] 2006, pet. filed); *Cunningham v. Columbia/St. David's Healthcare System, L.P.*, 185 S.W.3d 7, 10 (Tex.App.-Austin 2005, no pet.)(Chief Justice Laws opines that this Court is in accord with the Austin court); *Villegas v. Texas Dept. of Transp.*, 120 S.W.3d 26 (Tex.App.-San Antonio 2003, pet. denied); *but see Johnson v. Fuselier*, 83 S.W.3d 892, 897 (Tex.App.-Texarkana 2002, no pet.).

The majority follows the previous opinions in *Gandara* and *Alaniz*, but does not even mention that its most recent case seems to suggest that those cases may no longer be precedent. At the very least,

revised rules.

the majority should have spoken to this issue.

The procedural rules require appellant to designate any expert by a date certain. It is undisputed that the deadline was missed. Pursuant to Rule 193.6, the expert would not be allowed to testify at trial unless there was good cause shown. The *Chau* court agreed with this premise, finding that the trial court did not abuse its discretion in striking the affidavit in a summary judgment proceeding. That court held: "where the expert's testimony will be excluded at trial on the merits, it will be excluded from a summary judgment proceeding." *Chau*, 212 S.W.3d at 704.

Here, Carper would not have been allowed to testify at trial because he was not designated timely. But, the majority still reverses because the summary judgment rules are inapplicable to discovery.

I believe the summary judgment rule itself suggests that it is not totally separate from the discovery rules. Rule 166a(i) states, in part, "After adequate time for discovery, a party without presenting evidence, may move for summary judgment on the grounds that there is no evidence of one or more essential elements of a claim or defense...." By specifically allowing a party to move for summary judgment when there has been adequate time for discovery, the summary judgment rule itself shows that there is a connection between summary judgment motions and discovery. Further, the comments following Rule 166a state, in part: "A discovery period set by pretrial order should be adequate for discovery unless there is showing to the contrary...."[2] Both the rule and the comments suggest a blending of the discovery rules with the summary judgment rules to insure an orderly progression of a case.

It makes little sense under the revised rules to consider the rule regarding summary judgments as wholly separate from other pre-trial procedural rules such as those involving discovery. Both are procedural rules meant to expeditiously dispose of cases. The evidence would not be admissible at trial, therefore the trial court properly struck Carper's affidavit in this case. This scenario is akin to the supreme court's admonition to this Court in *United Blood Services v. Longoria*, 938 S.W.2d 29, 30 (Tex.1995). There, the supreme court cautioned that there was no difference between the standard for admissibility of evidence in a summary judgment and in a trial on the merits. And here, I believe there should be no difference in the application of the discovery rules of procedure whether being reviewed in a summary judgment proceeding or in a merits trial. Under either scenario, Carper doesn't get to testify.

I do not believe the trial court abused its discretion in striking the affidavit.

**2. There is no evidence that Fort Brown knew or should have known of a condition on the premises that posed an unreasonable risk of harm.**

Regardless, even if *Gandara* and *Alaniz* are correctly decided and are binding precedent, I believe that Carper's conclusory affidavit was properly struck. Conclusory affidavits by an expert are insufficient to support or defeat a summary judgment. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991). Expert opinions must be supported by facts in evidence, not conjecture. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 729 (Tex.2003).

**2.** The summary judgment was set for hearing on March 9, 2006, after the deadline for completing all discovery.

Carper's affidavit states that he inspected the chair nearly two years after the accident. Carper concluded that the chair was broken before Mr. Gillenwater sat in it and that the alleged defect was visible before the accident. This is speculation. From my review of the summary judgment record, there was no underlying evidence to support this conclusion. The undisputed facts regarding the chair's condition before the accident do not support Carper's theory that the welds were broken before the accident or visible upon inspection. No other witness testified that the chair presented an unreasonable risk of harm or that Fort Brown knew that the chair was dangerous or reasonably should have known that it was dangerous. Mr. Gillenwater testified that the chair he sat in appeared to be in good condition. He did not notice anything unusual. Frank Collins, manager of Fort Brown Condos, said that the equipment is inspected daily and if anything goes wrong it is repaired as soon as the problem is noticed. Prior to this accident, there had been no similar accidents.

The affidavit, even if considered, basically refers to the condition of the chair two years after the accident and does not point to any fact which would show the knowledge element required to hold Fort Brown liable under a premises liability theory. Essentially, Carper's conclusions are based on his speculative opinions made two years after the accident which are absolutely at odds with observations concerning the chair before the accident, including those of Gillenwater.

I would grant appellees' motion for rehearing and affirm the judgment of the trial court.